**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| JEANNE BAKER,<br><br>        Plaintiff,<br><br>vs.<br><br>E.I. DU PONT DE NEMOURS<br>AND COMPANY,<br><br>        Defendant. | Case No.: 2:14-cv-94<br><br>**COMPLAINT FOR MONEY<br>DAMAGES<br>(JURY DEMAND<br>ENDORSED HEREON)** |

## COMPLAINT

Plaintiff, by and through the undersigned counsel, hereby brings this Complaint for damages against the Defendant, E. I. du Pont de Nemours and Company (hereinafter referred to as "DuPont" or "Defendant"), named in the above styled matter, and allege the following:

### NATURE OF ACTION

1. This is a civil action for equitable relief, compensatory and punitive damages, costs incurred and to be incurred by Plaintiff, and any other damages which the Court or jury may deem appropriate for bodily injury and property damage arising from the intentional, knowing, reckless and negligent acts and omissions of the Defendant in connection with contamination of human drinking water supplies used by the Plaintiff.

### JURISDICTION AND VENUE

2. DuPont is a Delaware corporation authorized to conduct business in the State of Ohio and has a principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

3. DuPont owned and operated a manufacturing facility in Wood County, West Virginia known as the "Washington Works Plant."

4. At all times material hereto, the Defendant DuPont maintained systematic and continuous contacts in the state of Ohio, regularly transacted business within this state, and regularly avails itself of the benefits of this state.  Additionally, DuPont's acts and/or omissions, as described herein, were substantially conducted within the state of Ohio and have caused tortious injury to Plaintiff as well as thousands of other Ohio residents and citizens.

5. This action is brought for individual claims of Plaintiff, Jeanne Baker, who is a resident and citizen of Athens County, Ohio.

6. Jurisdiction and venue are proper in this Court pursuant to Ohio Revised Code ("RC") 2307.382 and because Defendant has conducted activity, profited from business, and tortiously injured resident citizens in the County.

**GENERAL ALLEGATIONS**

7. In connection with its manufacturing operations at its Washington Works Plant, DuPont has used hazardous, toxic and/or carcinogenic wastes, substances, pollutants and/or contaminants, including ammonium perfluorooctanoate (a/k/a C-8/FC-143/APFO/ DFS-2/PFOA) (hereinafter "C-8"), (collectively the "Materials") since the early 1950s.

8. C-8 is a toxic chemical used in the production of Teflon®.  An artificial chemical, C-8 has been proven to be toxic and hazardous. It has been linked in some studies with prostate cancer, breast cancer, bladder cancer, liver disease, cholesterol, and possible birth defects. An U.S. Environmental Protection Agency advisory board determined in 2005 that C-8 "likely" causes cancer in humans.

9. During the course of its operations at its Washington Works Plant, DuPont has negligently, recklessly, knowingly, carelessly, wrongfully and/or intentionally allowed, caused, and/or otherwise permitted and is continuing to so allow, cause, and otherwise permit releases of

2

Materials, from the Washington Works Plant into those waters that are and have been used for human drinking water purposes (the "Releases").

10. C-8 is a bioretentive substance.

11. C-8 is a bioaccumulative substance.

12. C-8 is a biopersistent substance.

13. C-8 is an animal carcinogen.

14. C-8 is a proven hazardous substance.

15. DuPont has established a "community exposure guideline" ("CEG") of 1 part per billion (1 ppb) for C-8 in public drinking water supplies for humans.

16. C-8 poses a risk to human health at a concentration of less than 1 ppb in water.

17. By at least 1984, DuPont had detected C-8 in water supplied for human consumption at levels exceeding 1 ppb.

18. By 1991, DuPont had detected C-8 in water obtained from local wells and in groundwater and surface waters otherwise impacted by the Releases at levels exceeding 1 ppb.

19. DuPont negligently, recklessly, carelessly, wrongfully, and/or intentionally failed to disclose to those other individuals who were using water impacted by the Releases that the levels of C-8 detected in the water exceeded DuPont's own internal CEG for C-8 in drinking water.

20. By at least May of 2000, DuPont had learned that the manufacturer of the C-8 used by DuPont at its Washington Works Plant, the Minnesota Mining and Manufacturing Company ("3M"), had decided to stop manufacturing and selling C-8, based upon concerns associated with the bio-persistence and relative toxicity of C-8.

21. By at least 2001, DuPont had learned that C-8 had been detected in private water wells hydraulically down-gradient from one or more of the locations where DuPont had dumped

C-8 into the ground, including DuPont's Dry Run Landfill in Wood County, West Virginia, and DuPont's Letart Landfill in Mason County, West Virginia.

22. Despite knowledge of the same bio-persistence and toxicity concerns known to 3M relating to the use of C-8 and its release into the environment and the fact that C-8 was getting into public and private human drinking water supplies, DuPont refused to stop using C-8 or releasing C-8 into the environment and now planned to begin direct manufacture of its own C-8 at the Washington Works Plant.

23. DuPont knew for several years that the C-8 being discharged from its Washington Works Plant, and discharge of C-8 into the Ohio River, was directly contributing to the levels of C-8 found in local human water supplies.

24. Two West Virginia water districts and four Ohio water districts turned out to be the most contaminated by C-8. These districts were: (1) Little Hocking, Ohio; (2) Lubeck Public Service District, West Virginia; (3) City of Belpre, Ohio; (4) Mason County Public Service District, West Virginia; (5) Tuppers Plains, Ohio; (6) Village of Pomeroy, Ohio.

25. DuPont knew for several years that the level of C-8 discharged from its Washington Works Plant could be reduced substantially by use of a carbon absorption treatment system at the Washington Works Plant.

26. DuPont took steps to purposely and intentionally conceal from the public the fact that C-8 had been detected in the human drinking water supplies at levels exceeding DuPont's 1 ppb CEG for C-8 in drinking water, including purposeful and intentional omissions of any reference to such test results when specifically asked about C-8 levels by members of the Parkersburg, West Virginia media and in a letter co-drafted by DuPont which was sent to local Ohio water customers, dated October 31, 2000.

4

27. It was not until the Spring of 2001, after the West Virginia Division for Environmental Protection ("WVDEP") first asked DuPont to begin monitoring and reporting to WVDEP the levels of C-8 discharged from DuPont's Washington Works Plant into the Ohio River, that DuPont installed a carbon absorption treatment system at its Washington Works Plant to attempt to begin reducing the levels of C-8 discharged directly from the Washington Works Plant into the Ohio River.

28. Since approximately 1979, DuPont had arranged and paid for medical monitoring, including periodic blood sampling, of those DuPont employees working at the Washington Works Plant who had been exposed to C-8 during the course of their employment at the Washington Works Plant.

29. At no time since C-8 was first detected in human drinking water had DuPont provided or paid for medical monitoring for the water customers known to be exposed to the probable C-8 exposure plume until after a class action settlement was reached in the *Leach v. E.I. DuPont* matter.

30. Effective December 1, 2006, the Ohio EPA listed C-8 as a toxic air contaminant.

31. In a March 2009 US Environmental Protection Agency ("EPA") Safe Drinking Water Act Consent Order with DuPont, the EPA determined that C-8 may present an "imminent and substantial endangerment to human health at concentrations at or above 0.40 ppb in drinking water." The levels from DuPont's own testing demonstrated C-8 levels in excess of this amount had emanated from its Washington Works facility.

32. The 0.40 ppb danger level expressed by EPA does not account for chronic exposure to C-8. In an effort to account for chronic lifetime exposure, independent researchers at the New Jersey Department of Environmental Protection identified a C-8 drinking water guidance value of 0.04 ppb, and entire order of magnitude, ten times lower, than the level set forth in the March 2009

5

Safe Drinking Water Act consent order and over twenty five times lower than DuPont's own testing demonstrated C-8 levels emanating from its Washington Works facility to be.

33. The United States EPA has found that C-8 can remain in the human body for years after initial exposure and that drinking water contaminated with C-8 can produce concentrations of C-8 in the blood serum that are higher than the concentrations present in the water itself.

34. In a 2003 C-8 related class action lawsuit ("class action") where DuPont was a named defendant:

    a. DuPont represented to the Court that there was no way for DuPont to prevent its C-8 emissions from getting into the class member's drinking water;

    b. DuPont represented to the Court that there were no alternatives to using C-8 in the Washington Works Plant's manufacturing operations; and

    c. The Court found that DuPont was continuing to actively and intentionally release C-8 from the Washington Works Plant into the air and water.

35. On October 18, 2006, a settlement to the class action was approved.

36. Part of the class action settlement created an independent Science Panel to conduct research into whether there is a probable link that exists between C-8 and human diseases.

37. On December 5, 2011, the Science Panel concluded there was a probable link between C-8 exposure and pregnancy induced hypertension.

38. On April 15, 2012, the Science Panel concluded there was a probable link between C-8 exposure and kidney cancer.

39. On April 15, 2012, the Science Panel concluded there was a probable link between C-8 exposure and testicular cancer.

40. On July 30, 2012, the Science Panel concluded there was a probable link between C-8 exposure and thyroid disease.

41. On July 30, 2012, the Science Panel concluded there was a probable link between C-8 exposure and ulcerative colitis.

42. On October 29, 2012, the Science Panel concluded there was a probable link between C-8 exposure and high cholesterol.

43. As part of the class action settlement, DuPont affirmatively agreed that any individual who was exposed to potentially C-8 contaminated drinking water, for at least one year prior to December 3, 2004, from any of six water districts ((1) Little Hocking, Ohio; (2) Lubeck Public Service District, West Virginia; (3) City of Belpre, Ohio; (4) Mason County Public Service District, West Virginia; (5) Tuppers Plains, Ohio; (6) Village of Pomeroy, Ohio) would be members of the class at issue in the settlement.

44. Any class member who was diagnosed with an injury for which the Science Panel had determined there was a probable link to C-8 exposure would be able to pursue an independent cause of action following the Science Panel's finding.

45. DuPont further agreed to and acknowledged that it has waived and would be unable to raise any general causation defense to the fact that a Science Panel determined probable link could in fact be caused by the C-8 contamination released from its Washington Works Plant.

46. Plaintiff was diagnosed with kidney cancer, an injury for which the Science Panel has issued a C-8 exposure probable link finding.

47. Plaintiff was exposed to potential C-8 contamination for at least a year prior to December 3, 2004 from at least one of the 6 designated water districts as outlined in the class action settlement.

7

48. The Releases have made and/or continue to make Plaintiff and other exposed individuals physically ill and otherwise physically harmed, and/or have caused and continue to cause associated emotional and mental stress, anxiety, and fear of current and future illnesses, including but not limited to, fear of significantly increased risk of cancer and other disease, among Plaintiffs and the other class members.

## FIRST COUNT
## BREACH OF DUTY, NEGLIGENCE, CONCEALMENT AND FRAUD

48. Plaintiff incorporates the allegations contained in Paragraphs 1 through 48 of this Complaint as if fully restated herein.

49. In connection with its operation of the Washington Works Plant, DuPont has had and continues to have a duty to operate and manage the Washington Works Plant in such a way as to not create a nuisance or condition causing any injury or damage to human health or the environment.

50. DuPont breached its duty of care by negligently operating and managing the Washington Works Plant and conducting other operations and activities at the Washington Works Plant in such a manner as to negligently cause, permit, and allow the Releases.

51. The Defendant's negligent acts and omissions proximately caused and continue to proximately cause damage to Plaintiff in the form of bodily injury and economic damage, in addition to creating conditions that are harmful to human health and the environment, for which the Defendant is liable.

52. The Defendant knowingly, intentionally, recklessly and/or negligently failed and/or refused to advise the Plaintiff, other exposed individuals, and the public at large of the dangers to their health and property posed by the Releases.

53. Defendant negligently, knowingly, recklessly and/or intentionally withheld information from the Plaintiff, other exposed individuals, and the public at large who had a right to

know of information which would have prevented the Plaintiff, other exposed individuals, and the public at large from being exposed to the Releases.

54. Plaintiff did not have sufficient information to determine the safety of the drinking water impacted by the Releases and, therefore, relied upon the superior knowledge of the Defendant in deciding to purchase and ingest the drinking water, and, as a result of Plaintiff's reliance on the Defendant's false and misleading affirmative misrepresentations and intentional omissions and hiding of relevant, significant and material facts and information, the Plaintiff, other exposed individuals, and the public at large were misled into believing the drinking water was safe and effective for human consumption.

55. Defendant withheld information which it had in its possession concerning research, testing, lack of research and testing, studies of humans and animals who had been exposed to C-8 that demonstrated that the Releases cause damage to humans and animals, as well as other information that medically, legally, scientifically and ethically the Plaintiff, other exposed individuals, and the public at large had a right to know before ingesting the drinking water and which Defendant had a duty under Ohio law to disclose.

56. As a proximate result of the aforesaid acts and omissions by the Defendant, acting for and on its own behalf and as agent, ostensible agent, employee, and conspirator of others, contaminated drinking water was placed in the stream of commerce, distributed and sold to customers in West Virginia and Ohio, and ingested by the Plaintiff, other exposed individuals, and the public at large, and Plaintiff was injured as herein alleged.

57. The aforesaid acts and omissions of Defendant were negligent and as a proximate result the Plaintiff, other exposed individuals, and the public at large have suffered and will in the future suffer some or all of the following damages:

    a. Medical and hospital bills treatment of injuries;

    b.    Physical injury, both temporary and permanent;
    c.    Economic damages;
    d.    Severe and significant emotional distress and mental pain and suffering;
    e.    Humiliation, embarrassment and fear;
    f.    Loss of enjoyment of life;
    g.    Annoyance and inconvenience; and
    h.    Other damages, which, under the law and circumstances, Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

## SECOND COUNT
## DEFECTIVE PRODUCT, FAILURE TO WARN AND CONSPIRACY

58.    Plaintiff incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

59.    The Defendant actively conspired to distribute the contaminated drinking water in an unreasonably dangerous and defective condition and permitted the contaminated drinking water to be placed in the stream of commerce knowing it would be ingested by humans, including the Plaintiff, other exposed individuals, and the public at large.

60.    The contaminated drinking water was defective in that, when it was placed in the stream of commerce, (1) the foreseeable risks exceeded the benefits associated with consumption; (2) the contaminated drinking water was more dangerous than the ordinary consumer, including the Plaintiff, other exposed individuals, and the public at large, would expect and more dangerous than other drinking water that was available and marketed in the area; (3) the contaminated drinking water was not distributed with sufficient warnings and instructions associated with its use; and (4) the contaminated drinking water was inadequately tested.

61.    The contaminated drinking water was defective in that, as distributed and sold, it was not accompanied by proper warnings and instructions and Defendant is strictly liable to the Plaintiff, other exposed individuals, and the public at large for their damages.

62. The aforesaid acts and omissions of Defendant have caused the Plaintiff to suffer, and continue to suffer in the future, some or all of the following damages:

    a. Medical and hospital bills treatment of injuries;
    b. Physical injury, both temporary and permanent;
    c. Economic damages;
    d. Severe and significant emotional distress and mental pain and suffering;
    e. Humiliation, embarrassment and fear;
    f. Loss of enjoyment of life;
    g. Annoyance and inconvenience; and
    h. Other damages, which, under the law and circumstances, Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

### THIRD COUNT
### UNFAIR AND DECEPTIVE PRACTICES (Ohio Revised Code §§ 1345.02)

63. Plaintiff incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

64. In October and November of 2000 and July of 2001, Defendant co-drafted, aided in publishing, and encouraged dissemination and circulation of written information through correspondence to the public exposed to known C-8 contaminates and did induce, directly and indirectly, West Virginia and Ohio residents, including Plaintiff, other exposed individuals, and the public at large, to enter into contracts and agreements to purchase and/or continue purchasing the drinking water, and to in fact purchase such drinking water when the published information was known and calculated by the Defendant to mislead Plaintiff, other exposed individuals, and the public at large in Ohio.

65. Defendant, through the publication of incomplete and false information regarding the safety of the drinking water, engaged in and aided in unfair methods of competition and unfair or deceptive practices as set forth in RC 1345.02 *et seq.*, including, but not limited to: advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast, a statement or representation with regard to the sale of

11

goods which was false, misleading, or deceptive, and/or which omitted to state material information which was necessary to make the statements made therein not false, misleading or deceptive and also by engaging in conduct which created a likelihood of confusion or of misunderstanding.

66. The acts and omissions described above violated RC 1345.02, *et seq*. in that Defendant withheld information about the deleterious effects of the Materials with the intent that Plaintiff, other exposed individuals, and the public at large purchase and consume contaminated drinking water when the Defendant knew if the truth were published or provided to Plaintiff, other exposed individuals, and the public at large that they would not purchase or consume the contaminated drinking water.

67. As a proximate result of the violation by Defendants of RC 1345.02, *et seq,* Plaintiff, other exposed individuals, and the public at large suffered an ascertainable loss of money or property and they are entitled to recover damages as provided by such statute.

### FOURTH COUNT
### NEGLIGENCE PER SE

68. Plaintiff incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

69. By its acts and omissions resulting in the Releases, the Defendant violated one or more applicable Ohio statutes, including but not limited to RC 6111 *et seq*., constituting negligence *per se*, including liability for injuries described herein to Plaintiff, other exposed individuals, and the public at large associated with the Releases.

70. The Defendant's violation of law proximately caused and continues to proximately cause damage to Plaintiff, other exposed individuals, and the public at large in the form of economic damage and bodily injury for which the Defendant is liable.

71.     The aforesaid acts and omissions of Defendant have caused the Plaintiff to suffer, and continue to suffer in the future, some or all of the following damages:

   a.   Medical and hospital bills treatment of injuries;
   b.   Physical injury, both temporary and permanent;
   c.   Economic damages;
   d.   Severe and significant emotional distress and mental pain and suffering;
   e.   Humiliation, embarrassment and fear;
   f.   Loss of enjoyment of life;
   g.   Annoyance and inconvenience; and
   h.   Other damages, which, under the law and circumstances, Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

### FIFTH COUNT
### PAST AND CONTINUING TRESPASS AND BATTERY

72.     Plaintiff incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

73.     The Defendant's acts and omissions resulting in the Releases have resulted and continue to result in the release and threatened release of Materials at, under, onto, and into the bodies of Plaintiff, other exposed individuals, and the public at large.

74.     The contaminated and harmful Materials present on and in the bodies of Plaintiff, other exposed individuals, and the public at large originated from the Washington Works Plant and were at all relevant times hereto, and continue to be, the property of Defendant.

75.     The invasion and presence of the Materials onto and into the bodies of Plaintiff, other exposed individuals, and the public at large was and continues to be without permission or authority from Plaintiff, other exposed individuals, and the public at large or anyone who could grant such permission or authority.

76.     The presence and continuing presence of the Materials onto and into the bodies of Plaintiff, other exposed individuals, and the public at large constitutes a continuing trespass and battery.

77. The Defendant's past and continuing trespass and battery onto and into the bodies of Plaintiff, other exposed individuals, and the public at large proximately caused and continues to proximately cause damage to onto and into the bodies of Plaintiff, other exposed individuals, and the public at large in the form of bodily injury and economic damage, for which the Defendant is liable.

78. The Defendant's past and continuing trespass and battery has caused the Plaintiff to suffer, and continue to suffer in the future, some or all of the following damages:

   a. Medical and hospital bills treatment of injuries;
   b. Physical injury, both temporary and permanent;
   c. Economic damages;
   d. Severe and significant emotional distress and mental pain and suffering;
   e. Humiliation, embarrassment and fear;
   f. Loss of enjoyment of life;
   g. Annoyance and inconvenience; and
   h. Other damages, which, under the law and circumstances, Plaintiffs are entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

## SIXTH COUNT
## PUNITIVE DAMAGES

79. Plaintiff incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

80. The Defendant's acts and omissions as described above were conducted with such intentional, malicious, wanton, willful, grossly negligent, and/or reckless indifference to the rights of Plaintiff, other exposed individuals, and the public at large that Defendant is liable for punitive damages.

81. The Defendant's acts and omissions as described above were conducted with such flagrant disregard for the safety and wellbeing of Plaintiff, other exposed individuals, and the public at large that Defendant is liable for punitive damages.

**WHEREFORE**, Plaintiff hereby demands to be awarded damages, equitable and injunctive relief as follows:

a. A judgment against Defendant that Defendant is liable to Plaintiff in an amount to be determined at trial;
b. Compensatory damages in an amount to be determined at trial;
c. Punitive damages in an amount to be determined at trial;
d. Damages as provided for pursuant to W. Va. Code § 46A-6-101 *et seq.*, including compensatory and punitive damages and equitable and injunctive relief;
e. The costs and disbursements of this action, including attorneys' fees;
f. Pre-judgment and post-judgment interest; and
g. For all other further and general relief, whether compensatory, punitive, equitable or injunctive relief as this Court or the jury may deem just and appropriate.

## JURY DEMAND

Plaintiff and the other class members hereby demand trial by jury on all issues so triable.

Date: January 27, 2014

BY: Debra Nelson
THE NELSON LAW FIRM, P.L.L.C.
P.O. Box 201
Huntington, West Virginia
304-736-7400
304-736-7402 (fax)

/s/ Debra Nelson
Debra Nelson

BY: Annesley DeGaris
Jon C. Conlin
CORY WATSON CROWDER & DEGARIS
2131 Magnolia Avenue
Birmingham, Alabama 35209
205-328-2200
205-326-7896 (fax)

Kathy Brown
KATHY BROWN LAW PLLC
2306 Kanawha Blvd, East
P.O. Box 631
Charleston, WV 25322

(304) 720-2351
(304) 720-2352 (fax)